LIQUOR CONTROL COMMISSION *v.* FRATERNAL ORDER OF EAGLES, AERIE NO. 629.

1. INTOXICATING LIQUORS—LICENSING PRIVATE CLUBS.

Under Const. 1908, art. 16, § 11, as amended in 1932, the liquor control commission of this State may license private clubs to sell and furnish alcoholic beverages under such rules and regulations as it may prescribe in the absence of statutory restrictions or adoption of county or local option (Act No. 8, Pub. Acts 1933 [Ex. Sess.]).

2. STATUTES—INTENT—INTERPRETATION.

To interpret a statute the Supreme Court must look to the entire act to ascertain the legislative intent in enacting it.

3. INTOXICATING LIQUORS—APPROVAL OF LOCAL LEGISLATIVE BODY— CLUB LICENSES.

Requirement of liquor control act that all applications for licenses to sell beer, wine or spirits for consumption on the premises shall be approved by the local legislative body in which applicant's place of business is located before being granted a license by the liquor control commission *held,* inapplicable to club where act excludes clubs as a business or as having a place of business, prescribes for them a different fee, limits sales to *bona fide* members, the majority of whom must be citizens, and contains special provisions relating to tenure of real estate and respecting publication of notice to the community in lieu of approval of local legislative body (Act No. 8, §§ 1, 2, 17, 19, 24, 56, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

4. STATUTES—AMBIGUITY—LEGISLATIVE HISTORY.

To determine the legislative intent in case a statute is ambiguous, resort may be had to the history of the statute and of the proceedings attending its actual passage through the legislature as disclosed by the legislative journals.

5. INTOXICATING LIQUORS—CLUB LICENSES ISSUED BY LIQUOR CONTROL COMMISSION WITHOUT LOCAL LEGISLATIVE BODY'S APPROVAL.
   The liquor control commission has authority under Act No. 8, Pub. Acts 1933 (Ex. Sess.), as amended by Act No. 281, Pub. Acts 1937, to license, in its discretion, properly qualified clubs to sell spirits for consumption on the premises to their *bona fide* members without the approval of the local legislative body or the electors of the particular city, village or township in which the club may be situated.

6. COSTS—PUBLIC QUESTION—LIQUOR LICENSES FOR CLUBS.
   In action to determine power of liquor control commission to issue licenses to clubs without approval of local legislative body, no costs are allowed, a public question being involved (Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

Appeal from Genesee; Gadola (Paul V.), J. Submitted June 17, 1938. (Docket No. 109, Calendar No. 40,174.) Decided October 3, 1938.

Bill by Liquor Control Commission of State of Michigan against Fraternal Order of Eagles, Aerie No. 629, for declaration of rights interpreting the provisions of Act No. 8, Pub. Acts 1933 (Ex. Sess.), as amended by Act No. 281, Pub. Acts 1937, relating to licensing of clubs for the sale of spirits for consumption on the premises. Decree for defendant. Plaintiff appeals. Affirmed.

*Raymond W. Starr,* Attorney General, and *Edmund E. Shepherd,* Assistant Attorney General, for plaintiff.

*Charles F. Hemans (Hazen J. Payette, Linsey, Shivel, Phelps & Vander Wal, Fred Sauer* and *Benjamin F. Watson,* of counsel), for defendant.

CHANDLER, J. This case was instituted by the liquor control commission of the State of Michigan as plaintiff against the Fraternal Order of Eagles, Aerie No. 629 of the city of Flint, to determine the

right of defendant, a private club, to sell spirits on its premises to its *bona fide* members in the city of Flint where such sales have not been approved in accordance with the provisions of the referendum section of the Michigan liquor control act (Act No. 8, § 56, Pub. Acts 1933 [Ex. Sess.] [Comp. Laws Supp. 1935, § 9209–71, Stat. Ann. § 18.1027]), as amended by Act No. 281, Pub. Acts 1937 (Stat. Ann. 1938 Cum. Supp. § 18.1027), and to obtain a declaration of rights pursuant to Act No. 36, Pub. Acts 1929 (3 Comp. Laws 1929, § 13903 *et seq.* [Stat. Ann. § 27.501 *et seq.*]).

The trial court, after a hearing on the bill of complaint and answer thereto, entered the following decree:

"It is ordered, adjudged and decreed, and this court by virtue of the authority therein vested, and in pursuance of Act No. 36, Pub. Acts 1929, does hereby declare and determine, as a binding declaration of rights, that under the express provisions of the Michigan liquor control act (Act No. 8, Pub. Acts 1933 [Ex. Sess.] as amended by Act No. 281, Pub. Acts 1937), as properly interpreted and construed, and especially sections 17, 24 and 56 thereof, the defendant, as a 'club' defined by section 2 of said act, when licensed as such by the plaintiff (Michigan liquor control commission), may be permitted to sell spirits for consumption on its premises in the city of Flint, although it appears that the local legislative body of said municipality has not by resolution approved such sale of spirits within said city of Flint, and that the electors of said city have not voted in favor of the sale of spirits for consumption on the premises, pursuant to section 56 of said act, as amended."

The following statement of facts and questions involved is to be found in the briefs submitted by

both parties. It is contended that the statute in question, as amended, is ambiguous, and an interpretation thereof is sought from this court. In ascertaining the meaning of the statute, it is necessary that we determine the legislative intent.

"This test case was instituted, and appeal from the circuit court's decree is claimed, to determine the rights of 'private clubs,' so-called, to sell spirits on the premises, to their *bona fide* members, in those cities, villages and townships where such sales have not been approved under the referendum section (section 56) of the Michigan liquor control act.

"The allegations of plaintiff's bill of complaint for a declaratory judgment, are admitted in defendant's answer, and no issues of fact are involved.

"The defendant, a fraternal association, is a 'club' within the statutory definition of that word (section 2, Michigan liquor control act, as amended). The majority of its members are citizens, and it has a 'common object;' it owns a building of such extent and character as in the judgment of the liquor control commission may be suitable and adequate for the reasonable and comfortable use and accommodation of its members and their guests; and it has been in existence for a period of not less than two years prior to its present and pending application for license under the provisions of the liquor control act.

"The defendant is otherwise qualified as a 'club;' it has filed with the liquor control commission its application for a license as such, commencing May 1, 1938, and ending April 30, 1939, for the privilege of selling beer and/or wine on the premises, and, in addition, requesting the privilege of selling spirits to its *bona fide* members, for consumption on the premises. The application has been approved by the local legislative body of the city of Flint, and

such approval accompanies the application pursuant to section 17 of the act.

"The defendant conducts its 'club' within the corporate limits of the city of Flint, but the legislative body of that municipality failed to vote in favor of the sale of spirits for consumption on the premises within the city, within 60 days after the effective date of Act No. 281, Pub. Acts 1937, which amended section 56 of the liquor control act, and the question of the sale of spirits for consumption on the premises within the city of Flint, in addition to beer and wine, has not been submitted to the electors of that municipality.

"Because of the foregoing facts, an actual controversy exists between the liquor control commission and the Fraternal Order of Eagles, Aerie No. 629, with respect to the granting of its application for a license, and with regard to the proper interpretation of construction to be placed upon the language of the liquor control act as applied to 'club' licenses for the privilege of selling to club *bona fide* members spirits for consumption on the premises within the city of Flint. This situation applies to many other 'clubs' throughout the State.

"First: It is contended by the defendant that a 'club' licensed by the liquor control commission may be permitted to sell or furnish spirits for consumption on the premises to its *bona fide* members, although the community wherein it is located has failed or refused to authorize the sale of spirits for consumption on the premises; that the liquor control act of 1933, as amended by Act No. 281, Pub. Acts 1937, when properly interpreted or construed, does not require as a condition precedent to the issuance of such a license that the city wherein it is located shall, by resolution of its legislative body or by vote of its electors, have voted in favor of the sale of spirits for consumption on the premises.

"Second: It is contended by the liquor control commission that, under the express terms of section 56 of the liquor control act, as amended by Act No. 281, Pub. Acts 1937, and other provisions of the act, no 'club' may be licensed by the commission to sell spirits to its *bona fide* members for consumption on the premises, unless and until the local legislative body of the city has by resolution voted in favor of such sale of spirits, or unless the electors of the city have on referendum given such approval.

"The task presented is one of interpretation, or construction, of:

"Const. 1908, art. 16, § 11;

"Section 1 of the Michigan liquor control act, as amended (Act No. 281, Pub. Acts 1937), indicating its scope;

"Section 2—defining its terms, which include 'club,' 'hotel,' and 'Class C License;'

"Section 17—authorizing certain licenses;

"Section 24—classifying vendors, and defining their rights; and

"Section 56—with respect to referendum on sale of spirits by the glass.

"The problem arises because of a lack of legislative coordination in amending the act in 1937.

"It would serve no useful purpose at this time to' quote at length the several provisions involved.

"Suffice it to say:

"(1) Prior to amendment in 1937, the following classes of vendors, or licensees, under the express terms of sections 2, 17, and 24 of the act, and subject to certain 'conditions, limitations and restrictions' thereof, upon payment of the required fee and posting of a bond, had the right to sell spirits for consumption on the premises: Hotels, class B (section 24); restaurants, class C (sections 2, 24); dining cars or other railroad or pullman cars, watercraft or aircraft, wherein 'alcoholic liquor' (which under its statutory definition, section 2, includes

spirits), may be sold for consumption on the premises.

" 'Clubs,' as defined by the act, were not expressly permitted to 'sell,' but might 'furnish' spirits to *bona fide* members only.

"(2) Act No. 281, Pub. Acts 1937, amended sections 2, 17, 19, and 24 in the following respects with regard to such classifications; Hotels, Class B, retained their privilege of selling spirits for consumption on the premises (section 24); 'restaurants' were abolished as a license class, and in place of restaurants Class 'C' was substituted a 'Class C License,' which, in effect, is a restaurant with all restrictions removed; dining cars, pullman cars and other railroad cars, watercraft and aircraft retained the privilege of selling spirits; and under the amendment clubs were permitted to '*sell*,' rather than to '*furnish*' spirits to *bona fide* members (section 24).

"(3) Section 56 of the act prior to the 1937 amendment—the 'referendum section,' provided:

" 'Referendum; sale of spirits by the glass. Spirits for consumption on the premises, in addition to beer and wine, may be sold by restaurants and hotels, approved by the commission under this act, in the following cities and villages or townships; when the legislative body of any such city or village or township shall, by resolution of a majority vote of the members elect, within 60 days after the effective date of this act, vote in favor thereof.'

"There followed certain provisions for a referendum to the electors of cities, villages and townships, who may, at their option, and by majority vote, determine that spirits may be sold for consumption on the premises 'under the provisions of this act.'

"The amendatory act of 1937 (Act No. 281) did not change the foregoing language in any material respect pertinent to this issue, and the phrase '*restaurants* and hotels, approved by the commission under this act' was retained, although in sections 2, 17, 19, and 24, as amended, '*restaurants*' as a class of vendors was abolished, and, in respect of the sale of spirits for consumption on the premises,

the 'Class C License' was substituted for restaurants of 'Class C.' ''

Const. 1908, art. 16, § 11, as amended in 1932, gives to the liquor control commission complete control of the alcoholic beverage traffic within the State subject only to statutory limitations, provided however, that neither the legislature nor the commission may authorize the manufacture or sale of alcoholic beverages in any county in which the electors thereof, by a majority vote, shall prohibit the same. Therefore, in this State, under this provision of the Constitution, unless restricted by statutory enactment or adoption of county or local option, the commission may license private clubs to sell and furnish alcoholic beverages under such rules and regulations as it may promulgate.

The scope of the act (Act No. 8, Pub. Acts 1933 [Ex. Sess.] [Comp. Laws Supp. 1935, § 9209–16 *et seq.*, Stat. Ann. § 18.971 *et seq.*]) is clearly indicated by its title, as amended by Act No. 281, Pub. Acts 1937, that portion of the same essential for a consideration of the questions here involved reading,

''An act to create a liquor control commission for the control of the alcoholic beverage traffic within the State of Michigan, and to prescribe its powers, duties and limitations.''

The powers above conferred are very broad and it is clearly indicated that there are no limitations thereon except by statutory enactment.

The real question involved in this proceeding is whether Act No. 281, § 56, Pub. Acts 1937, requiring affirmative action on the part of the legislative body of the municipality to permit restaurants and hotels, approved by the commission, to sell ''spirits for con-

sumption on the premises in addition to beer and wine," is also applicable to "clubs."

To answer this question properly requires an examination not only of Act No. 281, Pub. Acts 1937, but also of Act No. 8, Pub. Acts 1933 (Ex. Sess.), in order to ascertain, if possible, the meaning of that provision of the statute under consideration. To interpret the statute, we must look to the legislative intent.

If Section 56 were to be considered alone, there would be considerable force to the contention of plaintiff that "clubs" could not sell spirits to their members in any city, village or township unless the legislative body of such city, village or township, or the electors thereof, had voted by a majority vote in favor of such sales. However, we must consider the act in its entirety to arrive at the intent of the legislature and give such intent effect if it can be done without doing violence to the act.

Act No. 8, § 2, Pub. Acts 1933 (Ex. Sess.), defines a club as follows:

" 'Club' to mean an association whether incorporated or unincorporated, the majority of whose members shall be citizens, for the promotion of some common object, (not including associations organized for any commercial or business purpose, the object of which is money profit) owning, hiring or leasing a building, or space in a building, of such extent and character as in the judgment of the commission may be suitable and adequate for the reasonable and comfortable use and accommodation of its members and their guests. Such club shall file with the commission annually, within ten days of February first of each year, a list of the names and residences of its members, and similarly file, within ten days of the election of any additional member, his name and address, and that its aggregate annual

membership fees or dues and other income, exclusive of any proceeds of the sale of alcoholic liquor, are sufficient to defray the annual rental of its leased or rented premises, or, if such premises are owned by the club, are sufficient to meet the taxes, insurance, repairs, and the interest on any mortgage thereon. The affairs and management of the club shall be conducted by a board of directors, executive committee, or similar body chosen by the members. No member or any officer, agent or employee of the club shall be paid, or directly or indirectly receive in the form of salary or other compensation, any profits from the disposition or sale of alcoholic liquor to the club or to the members of the club, beyond the amount of such salary as may be fixed and voted at meetings by the members or by its directors or other governing body and as reported by the club to the commission, within three months after such meeting.''

This section was amended by Act No. 281, Pub. Acts 1937, by adding after the word ''guests'' in the eighth line [at end of first sentence above] of the paragraph defining ''club'' the following language:

''And which shall have been in existence for a period of not less than two years prior to application for a license under the provisions of this act. Public notice of the intent of the commission to issue such club license shall be given by publication in some newspaper published or in general circulation within the municipality at least 10 days before such license shall issue.''

Subdivision 11 of Act No. 8, § 19, Pub. Acts 1933 (Ex. Sess.), as amended by Act No. 281, Pub. Acts 1937, designates the license fee to be paid by a club as defined. Subdivision three of section 24, as amended, sets forth the rights of clubs under their licenses.

Was not the provision relative to publication of "notice of the intent of the commission to issue such club license," *supra*, and which was added to section 2 by Act No. 281, Pub. Acts 1937, intended to serve the same purpose as the affirmative vote of the legislative body of any city, village or township, or the affirmative majority vote of the electors thereof, as required by Act No. 8, § 56, Pub. Acts 1933 (Ex. Sess.), as amended by Act No. 281, Pub. Acts 1937, in order to permit the sale of spirits by restaurants and hotels? The publication of the notice enables interested parties to protest to the liquor control commission against the granting of a club license in the community; enables such commission to ascertain the sentiment of the community as to the advisability of issuing such a license; enables it to investigate more particularly the character of the club and its membership; and enables said commission to exercise its discretion in granting or refusing a license after the opportunity of a full hearing with reference thereto.

Throughout the entire act, clubs have been definitely classified as something different than hotels or restaurants. Section 17 of the amendatory act provides:

"Provided, however, That all applications for licenses to sell beer and/or wine and/or spirits for consumption on the premises shall be approved by the local legislative body in which said applicant's place of business is located before being granted a license by the commission."

By the wording of the act, clubs have been excluded as a business or as having a place of business. The above provision cannot, therefore apply to a club. Other distinctions also appear. The fees demanded for club licenses are different from those

demanded of other licensees. Sales are limited to *bona fide* members only. The majority of the members of the club must be citizens. There are also provisions relating to the tenure of the real estate occupied.

Further to assist us in determining the legislative intent, our attention has been called to 2 House Journal of 1937, p. 1261, where the following appears:

"Mr. Gartner moved to amend the bill as follows:

"10. Amend section 17, line 22, after the colon, by inserting the words 'PROVIDED HOWEVER, THAT THE COMMISSION SHALL NOT ISSUE CLUB LICENSES IN TOWNSHIPS, VILLAGES AND CITIES WHERE THE SALE OF SPIRITS BY THE GLASS IS PROHIBITED.'

"The motion did not prevail and the amendment was not adopted, a majority of all the members-elect not voting therefor."

"To determine the legislative intent in a case of ambiguity, resort may be had to the history of the statute, and of the proceedings attending its actual passage through the legislature as disclosed by the legislative journals." 59 C. J. § 605, p. 1017. See, also, *Rapid Railway Co.* v. *Michigan Public Utilities Commission,* 225 Mich. 425 (P. U. R. 1924 B, 585).

Counsel for plaintiff asks us to construe the phrase "restaurants and hotels" as used in section 56, as amended, to include "clubs," contending that the legislature did not intend the words used in the phrase to be given their literal meaning; and, that the phrase includes all vendors who conduct their business on premises within the boundaries of any city, village or township. If we hold, as contended for by plaintiff, we must by implication find that clubs were to be included under such classification.

In view of the definition of a "club" as given in Act No. 281, § 2, Pub. Acts 1937, and the action of the legislature in refusing to adopt the proposed amendment to section 17, as above quoted, we are convinced that the legislature did not intend to classify clubs as "restaurants and hotels" within the meaning of that phrase as used in section 56. We must, therefore, hold that affirmative action of the local governing body, or the electorate through referendum, is unnecessary under the act, this matter remaining in the hands of the liquor control commission, and that said commission, in the exercise of its discretion, has the authority to license properly qualified clubs to sell spirits to its *bona fide* members without the approval of the local legislative body or the electors of the particular city, village or township in question.

Decree affirmed. A public question being involved, no costs are allowed.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred. BUTZEL, J., took no part in this decision.