BARKER BROTHERS CONSTRUCTION v BUREAU OF SAFETY
AND REGULATION

Docket No. 151397. Submitted February 23, 1995, at Lansing. Decided
July 14, 1995, at 9:00 A.M.

The Bureau of Safety and Regulation, Construction Safety Divi-
sion, issued citations to Barker Brothers Construction, charging
it with violations of 1979 AC, R 408.40933(2) and wilful viola-
tions of 1979 AC, R 408.40941(1), construction safety standards
adopted pursuant to the Michigan Occupational Safety and
Health Act (MIOSHA), MCL 408.1001 *et seq.*; MSA 17.50(1) *et
seq.*, with respect to excavations at a water main project
undertaken by Barker Brothers Construction. A hearing ref-
eree at the bureau, the Board of Health and Safety Compliance
and Appeals, and the Ingham Circuit Court, Michael G. Harri-
son, J., upheld the citations. The petitioner appealed.

The Court of Appeals *held*:

1. Rule 933(2), which provides that an excavation that an
employee is required to enter shall have excavated and other
material stored and retained not less than two feet from the
excavation edge, applied to Daniel and David Barker, the
owners and operators of Barker Brothers Construction. In
performing tasks that an employee generally would have been
permitted to perform during the excavations, Daniel and David
may be deemed employees for purposes of the MIOSHA.

2. Competent, material, and substantial evidence on the
whole record supported the finding of the Board of Health and
Safety Compliance and Appeals that Barker Brothers Construc-
tion wilfully violated Rule 941(1). Daniel and David Barker
knew of the requirements of the rule and its applicability
because a compliance officer had given them a copy of the
standard, and yet they made a conscious, intentional, deliber-
ate, and voluntary decision to disregard the standard.

3. The good-faith belief of Barker Brothers Construction that
its owners were not employees for purposes of the MIOSHA is

REFERENCES

Am Jur 2d, Plant and Job Safety—OSHA and State Laws §§ 131,
137.
See ALR Index under Occupational Safety and Health.

irrelevant to the determination whether it wilfully violated Rule 941(1).

Affirmed.

1. STATUTES — MICHIGAN OCCUPATIONAL SAFETY AND HEALTH ACT — EMPLOYERS.

The owners and operators of a business, when performing tasks that an employee generally would perform, may be considered employees for purposes of the Michigan Occupational Safety and Health Act (MCL 408.1001 *et seq.*; MSA 17.50[1] *et seq.*).

2. STATUTES — MICHIGAN OCCUPATIONAL SAFETY AND HEALTH ACT — WILFUL VIOLATIONS.

An employer wilfully violates the Michigan Occupational Safety and Health Act when it makes a conscious, intentional, deliberate, and voluntary decision to disregard a safety standard promulgated pursuant to the act (MCL 408.1001 *et seq.*; MSA 17.50[1] *et seq.*).

*Robert W. Townsend,* for the petitioner.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Gregory T. Taylor,* Assistant Attorney General, for the respondent.

Before: HOLBROOK, JR., P.J., and JANSEN and O'CONNELL, JJ.

PER CURIAM. Respondent issued three citations to petitioner for alleged violations of the Michigan Occupational Safety and Health Act (MIOSHA), MCL 408.1001 *et seq.*; MSA 17.50(1) *et seq.* The citations were affirmed by the Board of Health and Safety Compliance and Appeals, and the decision of the board was affirmed by the Ingham Circuit Court. Petitioner appeals as of right, and we affirm.

I

Petitioner Barker Brothers Construction is a small construction business owned and operated by

brothers Daniel and David Barker, who have not formalized the business as either a partnership or a corporation. The business primarily installs private and public water mains. In addition to the owners, one or two employees are generally present at the work sites, but these employees are instructed not to go into trenches that do not comply with MIOSHA standards.

During the summer of 1988, petitioner was involved in a water main project in Genesee County. Respondent's compliance officer conducted inspections of petitioner's work site on June 27 and 30 and July 28, 1988, resulting in three citations being issued alleging eight separate MIOSHA violations. In this appeal, petitioner challenges four of these violations.

Item 4 of Citation No. CS 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 alleged a serious violation by petitioner of 1979 AC, R 408.40933(2), which provides:

> An excavation that an employee is required to enter shall have excavated and other material stored and retained not less than 2 feet from the excavation edge.

The citation alleged that petitioner had excavated a trench to a depth of seven to eight feet and that the excavated spoil was "piled about 5 feet high right up to the edge of the trench." The compliance officer saw one of the Barker brothers in the trench operating a boring machine. The penalty assessed was $80.

The three remaining challenged violations stemmed from 1979 AC, R 408.40941(1), which provides, in pertinent part:

> The side of an excavation more than 5 feet deep shall be sloped as prescribed in table 1, unless supported as prescribed in this part.

Item 5 of Citation No. CS 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 alleged that, on June 27, 1988, petitioner had committed a serious violation by excavating two trenches to a depth of six to eight feet that were not properly supported on their sides and not properly sloped. The noncomplying trenches were allegedly "occupied by employees operating a boring machine and preparing to lay watermain pipe." During the inspection of one of these trenches, the compliance officer saw an employee, not one of the Barker brothers, get out of the trench. The assessed penalty was $120.

Item 1 of Citation No. CS 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 and Item 1 of Citation No. CS 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 alleged that, on June 30 and July 28, 1988, respectively, petitioner had again violated Rule 408.40941(1) by excavating noncomplying trenches that were "occupied by [an] employee." The employee occupying the trench in each case was alleged to be one of the Barker brothers. Both citations were deemed to be for serious wilful violations and a penalty of $1,-200 was assessed for each violation.

Petitioner contested these citations, which were affirmed following a hearing by a hearing referee of the Board of Health and Safety Compliance and Appeals. Petitioner then petitioned for judicial review, and the Ingham Circuit Court affirmed. Petitioner now appeals as of right to this Court.

II

Petitioner challenges each of the four citations on the ground that only its two owners were permitted to enter noncomplying trenches and that, as owners, the Barker brothers could not also be considered "employees" so as to require compliance with MIOSHA standards. While we perceive some logic to this argument, we are not persuaded

that such an interpretation is consistent with the general purposes of the act.

## A

Legal rulings of administrative agencies will be set aside only if they violate the constitution or a statute, or are affected by substantial and material errors of law. MCL 24.306(1)(a) and (f); MSA 3.560(206)(1)(a) and (f); *Lehman v State Employees Retirement System,* 207 Mich App 453, 455; 526 NW2d 28 (1994). Longstanding and invariant administrative agency interpretations of a statute that the agency is empowered to administer are entitled to great deference by the courts, absent a contrary logical reading of the statute. *Manufacturers Nat'l Bank of Detroit v Dep't of Natural Resources,* 420 Mich 128, 145; 362 NW2d 572 (1984); *Majurin v Dep't of Social Services,* 164 Mich App 701, 704; 417 NW2d 578 (1987).

## B

In § 9 of the act, the Legislature has declared the general purpose and intent of the MIOSHA:

The safety, health, and general welfare of employees are primary public concerns. The legislature hereby declares that all employees shall be provided safe and healthful work environments free of recognized hazards. [MCL 408.1009; MSA 17.50(9).]

The act sets forth the following pertinent definitions:

(1) "Employee" means a person permitted to work by an employer.

(2) "Employer" means an individual or organiza-

tion . . . which employs 1 or more persons. [MCL 408.1005; MSA 17.50(5).]

Consequently, in order for a business to come within the scope of the MIOSHA, it must have employees; business size is irrelevant as long as there is at least one employee. In this case, Barker Brothers Construction, as a business entity, employed nonfamily members as employees to assist its owners at the work sites. Therefore, petitioner, as an employer, comes within the ambit of the act.

We reject petitioner's attempt to obviate this result by arguing that it was not formally organized into either a partnership or a corporation. The statutory definition of "employer" is extremely broad and clearly does not require such formality.

C

The Construction Safety Standards Commission has promulgated certain construction safety standards that "pertain to all employers and employees on a construction site." 1979 AC, R 408.40101. Petitioner is alleged to have violated two standards that pertain "to the digging of excavations and trenches which *an employee is required to enter* and the supporting systems used on construction operations." 1979 AC, R 408.40901. Petitioner asserts that the standards for which it was cited are inapplicable because only its owners were allowed to enter the trenches. In other words, petitioner asserts that David and Daniel Barker, as owners, could not also be considered employees for purposes of the MIOSHA. We disagree.

This argument, and ones analogous to it, have been raised before and summarily rejected. See the decision of the Board of Health and Safety Compli-

ance and Appeals in *Dep't of Public Health v Hankinson's Radiator Shop* (Docket Nos. NOA 88-4526, 88-4527, August. 3, 1988) (six working partners were employees for purposes of the MIOSHA). See also *Secretary of Labor v Howard M Clauson, d/b/a Howard M Clauson Plastering Co,* 5 OSHC 1760 (1977) (the federal Occupational Safety and Health Act [OSHA] does not exclude business owners or their families from coverage); *Secretary of Labor v Horning's Chair Shop,* 1986-1987 OSHD 36,345 (1986) (under liberal construction of definition of "employee," working partners who were generally treated as employees were covered under the federal OSHA); *Secretary of Labor v Nat'l Window Cleaning,* 12 OSHC 1532 (1985) (small company that employed only family members was not precluded from the broad coverage of the federal OSHA); *Secretary of Labor v Mangus Firearms,* 3 OSHC 1214 (1975) (silent partner in business who occasionally substituted for principal owner was an employee for purposes of bringing the employer within coverage of the federal OSHA). We find these decisions highly persuasive in light of our deferential stance toward administrative expertise and discretion in interpreting the OSHA and the MIOSHA.[1] *Majurin, supra.*

As remedial legislation, both the federal OSHA and the MIOSHA are to be liberally construed to accomplish their purposes. 29 CFR 1975.3. See generally 61 Am Jur 2d, Plant and Job Safety, § 7,

[1] We find decisions under the federal OSHA to be instructive because the language of the federal act closely parallels that of the Michigan act. Moreover, the federal act provides that a state plan's provisions must be "at least as effective" as those of the federal act, otherwise the federal provision will preempt the state provision. 29 USC 667(c)(2). Thus, we are precluded from interpreting MIOSHA provisions as less expansive than their corollary federal provisions. See *People v Hegedus,* 432 Mich 598, 621-622; 443 NW2d 127 (1989) (Congress intended the federal OSHA "to provide a kind of 'floor' of protection to employees").

pp 646-648. Were we to accept petitioner's argument that its owners, who performed tasks that an employee would generally perform, were not "employees" under the act, we would undermine the broad objective of the act to provide all employees with a work site free from recognized hazards. In *Howard M Clauson Plastering Co, supra* at 1760, the Occupational Safety and Health Review Commission stated:

> Both the employer and the Secretary raised the collateral issue of whether the employer and members of his family are covered by the Occupational Safety and Health Act. Both the employer and his family are covered. Coverage of family members is implied by 29 CFR 1975.3 which states that the legislative history clearly indicates that no employees were to be exempted from the provisions of the Act. Coverage of the employer is also required since, as held in *Ellenville Handleworks, Inc,* 1 OSHC 3121 (1973), any individual receiving financial return from a business for work performed is an employee. The employer would be included in this definition if he worked for the company on the jobsite and so would be included in the Act's coverage.

Accord *Bragg v Mobilhome Co,* 145 Cal App 2d 326; 302 P2d 424 (1956) (a roofing contractor who performed the work of one of his own employees was entitled to protection under the act's safety standards). The broad sweep of the MIOSHA was intended to afford all persons permitted to work by an employer a reasonably safe work environment, including employers who perform work that an employee would normally perform.

Finally, we note that our liberal construction of the statutory definitions of "employer" and "employee" may be at odds with common-law principles regarding employer-employee or master-ser-

vant relationships. Nonetheless, it is well established that construction of remedial legislation is governed first and foremost by the express language of the statute and that, when this language conflicts with the common law, the unambiguous statutory language must take precedence. See *Auten v Unemployment Compensation Comm,* 310 Mich 453; 17 NW2d 249 (1945); *Gallie v Detroit Auto Accessory Co,* 224 Mich 703; 195 NW 667 (1923). In *Mangus Firearms, supra,* the OSHRC explained:

> At common-law, an employer-employee relationship is established by a contractual relationship between the parties. . . . However, in remedial legislation, as the Act in question, the term "employee" has been construed in such a manner as will accomplish the statutory purposes, rather than strictly according to common law. In this case, [the silent partner] was performing the duties of a salesperson, which are commonly performed by employees. . . . In light of all the circumstances, it is concluded that [the silent partner] was an employee within the meaning of the Act, so that the employer is within the Act's coverage. [3 OSHC 1215.]

See also *Clarkson Construction Co v Occupational Safety & Health Review Comm,* 531 F2d 451, 457 (CA 10, 1976).

Accordingly, we find no legal error in the board's ruling that the Barker brothers were employees for purposes of the MIOSHA when they performed tasks that an employee would generally be permitted to perform. The citations are affirmed.

III

Petitioner next contests the board's determina-

tion that petitioner had wilfully violated the act, resulting in the assessment of enhanced civil penalties for the June 30 and July 28, 1988, citations. We find no error.

### A

Preliminarily, we note that petitioner only vaguely raised this issue in its petition for judicial review and did not raise it at the circuit court hearing. Notwithstanding petitioner's failure to preserve this issue properly for appellate review, we afford it cursory review because it was raised and addressed by the hearing referee in the administrative hearing.

This Court reviews a decision of an administrative agency in the same limited manner as does the circuit court. *General Motors Corp v Bureau of Safety & Regulation,* 133 Mich App 284, 287-288; 349 NW2d 157 (1984). Agency findings of fact are conclusive unless unsupported by competent, material, and substantial evidence on the whole record. MCL 24.306; MSA 3.560(206).

### B

At the time the contested citations were issued, § 35(4) of the MIOSHA governed wilful violations:

> An employer who wilfully or repeatedly violates this act, an order issued pursuant to this act, or a rule or standard promulgated pursuant to this act may be assessed a civil penalty of not more than $10,000.00 for each violation. [MCL 408.1035(4); MSA 17.50(35)(4).]

The corollary federal provision, 29 USC 666(a), is virtually identical to the above MIOSHA provision. Neither the OSHA nor the MIOSHA defines "wil-

fully" in the context of civil penalties. In *People v Hegedus,* 432 Mich 598, 605, n 7; 443 NW2d 127 (1989), our Supreme Court noted, in dictum, that the majority of federal circuits, including the Sixth Circuit, had adopted the definition of wilful stated in *Intercounty Construction Co v Occupational Safety & Health Review Comm,* 522 F2d 777, 779-780 (CA 4, 1975):

> "[W]illful" means action taken knowledgeably by one subject to the statutory provisions in disregard of the action's legality. No showing of malicious intent is necessary. A conscious, intentional, deliberate, voluntary decision properly is described as willful, "regardless of venial motive." [Citation omitted.]

See also *Empire-Detroit Steel v Occupational Safety & Health Review Comm,* 579 F2d 378, 384 (CA 6, 1978); anno: *What constitutes "willful" violation for purposes of §§ 17(a) and (e) of occupational safety and health act of 1970* [29 USCS §§ 666(a) and 666 (e)], 31 ALR Fed 551, § 4.

Applying the above definition to this case, we conclude that competent, material, and substantial evidence on the whole record supported the board's finding that petitioner wilfully violated the requirements of Rule 408.40941(1) in excavating its trenches on June 30 and July 28. Petitioner's owners knew of the requirements and their applicability because they had been given a copy of the standard by the compliance officer at the June 27 inspection.[2] Anno: *What constitutes "willful," su-*

---

[2] Although a final determination on the merits of a previously issued citation apparently is a prerequisite for imposition of enhanced penalties for a "repeated" violation of the act, see 61 Am Jur 2d, Plant and Job Safety, § 82, pp 745-746, there is no such requirement for a finding of wilfulness. Thus, contrary to petitioner's claim, petitioner's violation of the safety standard on June 27 provided a proper basis for the finding of a wilful violation of the same standard on June 30 and July 28.

*pra.* Yet, petitioner's owners made a conscious, intentional, deliberate, and voluntary decision to disregard the standard in violation of the act. Furthermore, petitioner's noncompliance resulted in an unabated hazardous condition that endangered the lives of its employees.

Petitioner's good-faith belief that its owners were not employees for purposes of the act is irrelevant to a determination whether it wilfully violated the pertinent safety standard. See *Intercounty Construction Co, supra.* See also *Reich v Trinity Industries, Inc,* 16 F3d 1149, 1154 (CA 11, 1994); *Donovan v Capital City Excavating Co, Inc,* 712 F2d 1008, 1010 (CA 6, 1983). An employer may not substitute its judgment for the requirements of the MIOSHA; the employer must adhere to what it knows to be the law despite its subjective belief that the agency's determination is invalid. *Trinity Industries, Inc, supra; RSR Corp v Brock,* 764 F2d 355, 363 (CA 5, 1985).

Accordingly, we affirm the board's determination that enhanced civil penalties were warranted in light of petitioner's wilful violation of the act.

IV

Petitioner's remaining issues are wholly without merit and we need not address them.

Affirmed.